## E. F. MULLOY *v.* NASHVILLE & DECATUR RAILROAD CO., AND DAVIDSON COUNTY.

1. *Railroads. Charters. Amendments.* The Nashville & Chattanooga Railroad Company was incorporated by an act of the Legislature, and afterwards the charter was amended by an act passed January, 1848, as follows: "That said company be required to estimate and pay, semi-annually, to the several holders thereof, a sum equal to six per cent. per annum on the capital stock of said company, actually paid in, to be charged to the cost of construction, *provided,* a majority of the stockholders at their first regular meeting agree thereto." The amendment was accepted. In 1852 the Tennessee & Alabama Railroad Company was chartered; having "all the rights, powers and privileges, and subject to all the liabilities and restrictions conferred and imposed upon the charter of the Nashville & Chattanooga Railroad Company, and all the various amendments thereto." *Held,* that the amendment to the charter of the Nashville & Chattanooga Railroad Company, by acceptance, became a part of the charter, and thereby became a part of the organic law of the Tennessee & Alabama Railroad Company, and did not require the action of a majority of its stockholders to accept it at its first regular meeting.

2. *Same. Same. Same.* By an act of the Legislature, February 14, 1856, it was provided "that the Tennessee & Alabama Railroad Company, * * shall, by and with he consent of the county court of Davidson county, be required to issue stock to the tax-payers of said county, for the amount of the annual tax which has already, and may hereafter be paid by said tax-payers, to provide for the interest on the bonds issued by said county for said Railroad Company, on presentation of the tax receipts; said tax receipts shall be negotiable by endorsements, and no stock shall be issued for a less amount than one share, provided said Railroad Company shall not be required to issue stock for said tax receipts *until* the first dividend is ready to be made, at which time, or any time thereafter, shall issue the same." The county court of Davidson gave its assent, and thereupon, upon a meeting of the stockholders of the said Railroad Company, it was "Resolved that this Company accept, as an amendment to its charter, the act of the General Assembly of the State of Tennessee, entitled "an act for the benefit of the railroad tax-payers of Davidson county," passed February 14, 1856, *provided* this Company shall not be

Mulloy v. Railroad.

bound to issue any stock to the tax-payers upon the presentation of tax receipts, of any tax imposed after the declaration of the dividend which shall be made by this Company; and *provided*, further, that said stock shall not be issued but by and with the consent of the county court of Davidson county." *Held*, that the Railroad Company did not accept the contract contained in the act. The acceptance is qualified by a proviso introducing a new condition to the contract, not authorized by the act of the Legislature.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. W. P. HICKERSON, SP. J.

J. P. HELMS for Mulloy.

DEMOSSS & MALONE and T. L. DODD for Davidson ·county.

ED. BAXTER for Railroad Company.

FREEMAN, J., delivered the opinion of the court.

This is an application for a *mandamus*, filed September 20, 1875, in the circuit court of Davidson county, to compel the issuance of stock in the defendant's company, to plaintiff, on certificates and tax receipts, purporting to evidence the fact of payment of taxes assessed . by Davidson county, to pay interest on certain bonds of the county issued in payment for subscription of stock in the Tennessee & Alabama Railroad Company. The facts on which the questions to be decided rest, are substantially as follows:

The Tennessee & Alabama Railroad Company was ·chartered by an act of the Legislature, February 23, 1852, but the terms of the act simply created the

body corporate, giving its name and object, and added, 'and said company shall have all the rights, powers. and privileges, and be subject to all the liabilities and restrictions conferred and imposed upon the charter of the Nashville & Chattanooga Railroad Company, and all the various amendments, etc., thereto.

It was further provided, that the capital stock of the company might be increased or decreased in the discretion of the company. By a subsequent act of the same session of the Legislature, the county of Davidson was authorized to subscribe for stock to the road, and to issue bonds in payment for such stock subscribed, after submitting the question to a vote of the people, the bonds to run not less than ten nor more than twenty years—to bear six per cent. interest—and made payable to the Railroad Company. It was made the duty of the county court, after the issuance of such bonds, to lay and collect an annual tax to meet the accruing interest, and also, for the purpose of raising a sinking fund for the ultimate payment of the bonds.

By the 16th section of the act, it was provided that the stock so taken, should belong to the county, and the dividends accruing on the same, "shall constitute a fund for county purposes, and may, from time to time, be appropriated as a majority of the justices of the peace for said county, may, in county court, direct. In pursuance of the authority thus conferred, the county of Davidson subscribed for $200,000 of stock in this company, and her bonds were issued to the company; a tax has been regularly levied since,

and collected from the people to meet the interest as required. ·

By an act passed January 21, 1848, the charter of the Nashville & Chattanooga Company was so amended "that said company be required to estimate and pay semi-annually, to the several holders thereof a sum equal to six per cent. per annum, on the capital stock of said company actually paid in, to be charged to the cost of construction, *provided* a majority of the stockholders, at their first regular meeting, agree thereto." It is conceded that this amendment was accepted by the Nashville & Chattanooga Company, and had become a part of their charter before the act of 1852 was passed, by which the defendant company was incorporated.

The first question presented in this case is, whether this amendment of 1848, became a part of the organic law of the Tennessee & Alabama Company, by virtue of the act incorporating said company, or whether it required the action of a majority of its stockholders to accept it at the first regular meeting?

An able and ingenious argument is made to sustain the latter view. We do not think this contention is sound. The Tennessee & Alabama Company was incorporated by the act of 1852, and all its privileges and powers, with its liabilities were intended then to be fixed, and these were what was then found embodied in the charter of the Nashville & Chattanooga Railroad Company, "and all the various amendments, etc., thereto." The company was organized under this charter, and by such organization, has accepted the

·charter as it stood. In fact, it could not have thus organized, and rejected a part of the charter of the Nashville & Chattanooga Company, or any amendment thereto. The charter granted them did not contain this act of 1848, as an amendment to the charter of the Tennessee & Alabama Company, subject to acceptance or rejection, as when proposed to the Nashville & Chattanooga Company. The whole charter. made up of the original and amendments, was tendered by the Legislature to this company, and by organizing under it, accepted as a whole. The other company had an option, because already it existed as a completed ·organism. When accepted, however, it became a part and parcel of the organic law of that company—and then in this form the whole charter was made the organic law of the present defendant corporation. We conclude, beyond question, that this is the fair result of the facts as presented, and the obligations of this amendment of 1848, were binding on the company: See *Woodfolk* v. *Union Bank*, 3 Cold., 499.

It follows, that as a part of the fundamental law of the defendant corporation, the company was required to estimate and pay a *semi-annual* dividend to the several stockholders thereof, equal to six per cent. per annum on the capital stock actually paid in, to be charged to construction account.

This provision became a part of the contract under which all stock was subscribed and paid in said company, of which the stockholder could not be deprived, except by his consent legally expressed.

The county of Davidson having subscribed for $200,-

000 of stock in the company, and paid for the same in her bonds, was entitled to, and had her stock issued as was her right. It was stock paid in within the meaning of this act, though not paid in money. The company was authorized to receive pay for such stock from the county in the bonds, and they were accepted as a mode of payment. The county then became entitled to the six per cent. interest on her stock, no more appearing, as between her and the company. But it was not intended, nor is it so declared, that this sum shall discharge or lessen the stock of the county, nor in any way be a credit on the same, or in place of stock to the amount thus required to be paid. It is, to say the least of it, a provision, that with the experience and superior knowledge of the practical workings, and results, of such enterprises, would never be inserted, or if offered would probably never be accepted by any company to be organized to build a railroad at the present day. It would, however, be enforced, according to its fair meaning, as was understood by the parties to the contract, in a proper case. It was not confined to subscribers paying stock in bonds, as counties and municipal corporations, and therefore, it had no reference or relation to the fact, that the bonds of the county, issued to the railroad, bore interest till maturity, nor was it intended to reimburse the county for this interest. The county had its stock. The company had its bonds, as capital stock, to be negotiated, if so desired, for means to build its road, and thus the contract was executed, and complete as between the parties. By this,

their respective rights and liabilities were then fixed. Thus the rights of the parties stood, until February 14, 1856, when the Legislature passed an act, which provided "that the Tennessee & Alabama Railroad Company, the Northwestern Railroad Company, and the Edgefield & Kentucky Railroad Company, shall, by and with the consent of the county court of Davidson county, be required to issue stock to the tax-payers of said county, for the amount of the annual tax which has already, and may hereafter be paid, by said tax-payers, to provide for the interest on the bonds issued by said county, for said railroads, on presentation of the tax receipts for the respective railroads; said tax receipts shall be negotiable by endorsement, and no stock shall be issued for a less amount than one share, *provided* said Railroad Company shall not be required to issue stock for said tax receipts *until* the first dividend is ready to be made, at which time, or at any time thereafter, shall issue the stock."

It is difficult to see what reason there could be for the passage of this act, from its terms taken alone. It certainly would be more difficult to see a reason for the Railroad Company desiring, or even accepting it, as an amendment to its charter. The county owned its stock, as we have said, and had issued its bonds some months before, or longer, in payment for the stock. These bonds were the debt of the county, and bore interest at the rate of six per cent. per annum, and for this the county was liable, but the Railroad Company, as between it and the county, was in no wise liable to the county for the payment of this in-

terest.  In fact, by the terms of the act of Februa-
ry 28, 1852, under which Davidson county was au-
thorized to take the stock, and issue the bonds, the
bonds were to be payable *to* the company, so that at
first the indebtedness was directly to the company, and
to bear six per cent. interest.   The idea of the cred-
itor holding the bond of his debtor bearing interest,
being in any way made liable to pay to his debtor,
or to any one by his consent, interest on a debt due
to himself, is not conceivable in the nature of the
thing; yet strangely, we have in this statute such a
requirement in substance, the payment, however, to be
made in stock of the company to be issued to the
tax-payers, who had paid his tax to the county, to
be appropriated to the discharge of the interest due on
the county bonds.

It is true it had been provided, that the dividends
accruing to the county, on the stock taken, were to
belong to the county, "and to constitute a fund for
county purposes," and might be appropriated as the
county court might direct: Section 16 of act February
28, 1852.   It is also true, that by the amendment of
1848, the company was bound to pay six per cent.
per annum on capital stock actually paid in, but it is
not hinted in this act of 1856, that this stock shall
be in discharge of the six per cent, nor that it shall
be in lieu of, or in the place of dividends, nor be a
credit on the stock owned by the county, or come out
of the same, as held by the circuit judge.   It is only
*provided,* "said Railroad Company shall not be required
to issue stock for the tax receipts, until the first div-

idend is ready to be made, at which time, or any time thereafter, shall issue the stock." This only postponed the time of issuing the stock till declaration of dividends, at or after which time the issue might be demanded.

It is clear this enactment imposed the obligations of a contract, or definite liability on the company by its terms, to issue to the tax-payer the amount in stock in the company, which he had paid in taxes assessed to pay the interest on Davidson county's indebtedness incurred by issuance of her bonds, in payment for her stock. We need do no more than say, that this could not be done, except by the assent of the company. A contract requires the assent of both the party benefitted and the party upon whom an obligation is imposed by it. The company, though only a legal person, could not have such a contract imposed upon it, except by its assent legally given.

This act does not purport, on its face, to be an amendment to the charter of the company. Its title is "an act for the benefit of the railroad tax-payers of Davidson county."

That it was understood by the Legislature, that this arrangement required the consent of the company, is clearly seen from the first section of the act of February 26, 1856, which provided that the several railroad companies incorporated in this State might increase their capital stock to the amount of interest which might be collected to pay interest on county bonds paid in discharge of county stock, "and when any company shall *agree* to such an increase of its cap-

ital stock," the collectors of railroad tax to pay the interest aforesaid, to execute to each tax-payer a separate receipt for the railroad tax, setting forth the company in which it is paid, and said receipts were to pass by endorsement, and when an amount equal to a share of stock was presented, a certificate therefor was to be issued.

It is seen the company was to agree to the increase of its capital, before the certificates were to be issued. How the capital stock was to be increased in fact, by the process suggested, is not very apparent, though we can see how the shares of stock would be.

In this view of the case, the question is vital to the rights of the complainant in this case, as the assumed owner of the tax certificates, representing taxes paid by citizens of Davidson county, whether the company has accepted or agreed to the requirement of the act of February 14, 1856, requiring this, with other companies, with the consent of the county court, to issue stock to the tax-payers, who had paid taxes to meet the interest on the bonds issued by the county for said railroads.

It appears from the record that the county court gave its assent (as well it might), that the tax-payer might receive the stock, and ordered the issuance of certificates of the amount of such tax paid by each tax-payer. It also appointed the Hon. Edwin H. Ewing and Judge East, with Judge Whitworth, to represent the county in a meeting of the stockholders to be held at Franklin, to procure an acceptance of the proposed obligation on the part of the company.

An acceptance of the act of 1856, with a priviso, however, was procured, by the following resolution:

*Resolved,* That this company accept, as an amendment to its charter, the act of the General Assembly of the State of Tennessee, entitled "an act for the benefit of the railroad tax-payers of Davidson county," passed Febauary 14, 1856; *provided,* this company shall not be bound to issue any stock to the tax-payers upon the presentation of tax receipts for *any tax* imposed after the declaration of the dividend, which shall be made by this company, and *provided* further, that said stock shall not be issued, but by and with the consent of the county court of Davidson county.

Conceding this resolution is shown to have been accepted, and bind the company, so far as the form of its adoption is concerned, it cannot be questioned, we think, that it is *not* the contract proposed by the Legislature in the act of 1856. The act is accepted in terms, by the first part of the resolution, but the acceptance is qualified by a proviso, that introduces a new term to the contract, not provided for by the act. In other words, the resolution accepts the act, but not the contract contained in the act, but presented a different one to be accepted by the county of Davidson, which seems to have been agreed to by the county court. The company accepted the act, but rejected the contract proposed in it. This whole proceeding is based on the idea and theory that the company was bound by acceptance of the act of February 14, 1856, and this we have seen has not been done by the company, but only an acceptance, with

Railroad Company *v.* Garrett.

substantially a new proposition not authorized by the act of the Legislature, and so far as we can see, having no authority in law, whatever, to warrant it. Certainly on the facts of the case, the issuance of this stock to the tax-payers, would be a mere gratuity on the part of the company, and we do not suppose it would be seriously contended that such an undertaking could be enforced in a proceeding by *mandamus*—or probably by any other.

The result is, that the petition for *mandamus* in favor of complainant as a tax-payer, is dismissed, the decree of the court below being reversed with costs.

McFARLAND, J., said:

I concur in this opinion, and would, upon other grounds, reach the same conclusion.